# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| Washington Government Environmental Services, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Shaw Areva Mox Services, LLC, <br><br> Defendant. | Civil Action: 1:15-mc-101 <br><br> **MOTION TO QUASH SUBPOENA OR ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER** |

Pursuant to Rules 45(c) and 26(c) of the Federal Rules of Civil Procedure, Major Tool & Machine, Inc. ("MTM") moves this Court for an order quashing the subpoena issued by Plaintiff Washington Government Environmental Services Company, LLC, Engineered Products Division ("Plaintiff") or alternatively a protective order. In support of its motion, MTM shows the Court as follows:

1. MTM is headquartered in Indianapolis, Indiana, and is a leader in providing high quality manufacturing, engineering, fabrication, precision machining and assembly services for a variety of industries, including aerospace, defense and nuclear materials. Affidavit of Natalie A.G. Weir ("Weir Affidavit") ¶ 4. A true and accurate copy of the Weir Affidavit is attached hereto as <u>Exhibit A</u>.

2. Plaintiff is a direct competitor to MTM in the metal fabrication industry. Weir Affidavit ¶ 4.

3. MTM has an ongoing contractual business relationship with Defendant Shaw Areva Mox Services, LLC ("Defendant"). Weir Affidavit ¶ 5.

4. On or about October 19, 2015, Plaintiff issued a subpoena to MTM requesting the production of materials related to MTM's business relationship with Defendant. The subpoena

response deadline is November 18, 2015. A true and accurate copy of the subpoena is attached hereto as <u>Exhibit B</u>.

5. Plaintiff served MTM with the subpoena on October 21, 2015.

6. MTM's counsel e-mailed Plaintiff's national counsel on November 4, 2015 identifying MTM's objections concerning the subpoena. In response, Plaintiff's South Carolina attorney indicated a willingness to work with counsel for MTM to narrow the scope of production of certain financial information requested in the subpoena. These discussions are ongoing and hopefully a resolution can be reached without the need for further involvement of this Court. However, given the subpoena deadline, MTM must protect itself by filing this Motion. As of the filing of this Motion, MTM's counsel and Plaintiff's counsel have not resolved MTM's objections raised in its November 4, 2015 e-mail.

7. MTM objects to the subpoena on the following grounds:

(a) The requests are unreasonably cumulative and duplicative of discovery that can be served on Defendant;

(b) It would be more convenient, less burdensome, and less expensive to obtain much of the requested information from Defendant through the discovery process;

(c) The documents that cannot be obtained from Defendant through discovery contain MTM's most closely guarded, valuable, confidential and proprietary business information, the production of which would cause devastating and irreparable damage to MTM; and

  (d)  The requests seek the production of documents, which if produced, could expose MTM to a breach of contract claim for violating confidentiality clauses in MTM's contracts with Defendant.

8. Plaintiff's subpoena improperly requests MTM to produce its confidential and proprietary business information. Specifically, the subpoena seeks, at least, the following confidential and proprietary information:

  (a)  Request #2 demands MTM produce its confidential and proprietary design analyses, including financial issues and estimates, engineering analyses, MTM workpapers, internal meeting minutes, and "the like";

  (b)  Request #3 demands MTM produce its bids and proposals;

  (c)  Request #4 demands MTM produce its communications with Defendant concerning MTM's confidential and proprietary designs and changes to the products MTM is designing, engineering, manufacturing and providing to Defendant;

  (d)  Request #5 demands MTM produce the final contracts it entered into with Defendant, including related documents associated with the contracts, thereby revealing its confidential and proprietary pricing information and proprietary designs;

  (e)  Request #6 demands MTM produce all communications with Defendant concerning any of MTM's designs, changes to MTM's designs and cost increases;

  (f)  Request #7 demands MTM produce any modifications to the contracts, supplier requests, deficiency reports and engineering change requests;

(g) Request # 8 demands MTM produce its invoices and MTM payment records which would disclose confidential and proprietary financial information, including potentially competitive labor rates;

(h) Request #9 demands MTM produce any requests for monetary adjustment to the contracts between MTM and Defendant; and

(i) Request #10 demands MTM produce broad categories of documents relating to design deficiencies.

9. Proprietary information provides a company with a competitive advantage and results in competitive harm when it is revealed. *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 416 (S.D. Ind. 2001).

10. MTM has developed its own proprietary engineering and design techniques, manufacturing processes, fabrication methods, design analyses, other technology, labor rates, profit percentage calculation, bidding strategy and similar information, which were intended to and do provide MTM with a competitive advantage in the marketplace. Weir Affidavit ¶ 6.

11. MTM's proprietary information is not generally known to those outside MTM. Weir Affidavit ¶ 9.

12. The subpoenaed information provides MTM with a competitive advantage. Weir Affidavit ¶ 6; *see Ackerman v. Kimball Inter'l, Inc.*, 634 N.E.2d 778 (Ind. Ct. App. 1994) (holding that a competitive disadvantage may be gained by obtaining customer lists and pricing data); *Star Scientific, Inc.*, 204 F.R.D. at 416 (issuing a protective order because dissemination of plaintiff's customer lists, research relating to consumer purchasing habits, pricing information, and sales techniques and volumes may have led to a competitive disadvantage);

4

*Bridgestone/Firestone, Inc. v. Lockhart*, 5 F.Supp.2d 667, 678 (S.D. Ind. 1998) (holding that a company's pricing, production costs, profits and margins is valuable).

13. The requests set forth in the subpoena would require MTM to divulge its most guarded, valuable, proprietary and confidential business information to its direct competitor. Weir Affidavit ¶ 7.

14. A Court may prevent a party from seeking discovery if the information sought is confidential or a trade secret, the disclosure of which may be harmful. Fed. R. Civ. P. 45(d)(3) (stating that the court may quash the subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information"); Fed. R. Civ. P. 26(c) (stating that the court may issue a protective order "required that a trade secret or other confidential research, development, or commercial information *not be revealed*….") (emphasis added); *Ellis v. CCA of Tennessee, LLC*, No. 1:08-cv-0254-SEV-JMS, 2009 WL 234514 (S.D. Ind. Feb. 2, 2009); *Star Scientific, Inc.*, 204 F.R.D. at 416.

15. MTM's business would suffer devastating, irreversible and irreparable harm if Plaintiff, a direct competitor, gained access to MTM's confidential and proprietary information. Weir Affidavit ¶ 10.

16. Additionally, Plaintiff has not established how the production of MTM's confidential and proprietary business information has any connection, much less relevance, to Plaintiff's breach of contract claim against Defendant.

17. Plaintiff should not be allowed to use the Court's subpoena power to force a direct competitor, MTM, that is not a party to the underlying action to reveal its valuable, confidential and proprietary business information. *See Ultimate Timing, L.L.C. v. Simms*, No. 6:09-mc-RLY-

WGH, 2009 WL 1148056 (S.D. Ind. April 28, 2009) (quashing subpoenas issued to third parties where subpoena was potentially a fishing expedition for competitor's proprietary information).

18. The contracts between MTM and Defendant contain a confidentiality clause prohibiting the disclosure of certain information sought by Plaintiff. If MTM produced the requested information, it would be exposed to a potential breach of contract claim from Defendant. Weir Affidavit ¶ 8.

19. The subpoena also sets forth a list of instructions in which Plaintiff seeks to require MTM to produce all electronically stored information ("ESI") in "single-page .TIFF Group 4 Compression files with corresponding text files and the metadata fields specified below in a separate load file compatible with litigation database software such as Concordance, Relativity, and Summation."

20. The subpoena further instructs MTM to provide, among other things, bates numbers, page count, document extensions, date created, time created, etc. for each file.

21. These instructions are, on their face, unduly burdensome and would subject MTM to significant and overly burdensome expense.

22. A court may restrict discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i) (2015).

23. MTM does not maintain all of its ESI in the .TIFF format, nor does MTM utilize the software cited in Plaintiff's instructions. Weir Affidavit ¶ 12.

24. MTM does not have the manpower nor the technological expertise to produce ESI in accordance with Plaintiff's instructions. Weir Affidavit ¶ 12.

25. MTM would incur overwhelming expense if it complied with the burdensome instructions set forth in the subpoena. In order to comply with Plaintiff's burdensome requests, MTM would be forced to hire additional assistance or redirect internal resources away from critical MTM business to sort through years of emails and paperwork. MTM has two contracts with MOX (with three separate purchase orders) relating to several ongoing projects with MOX since 2013, and, thus, MTM would have to physically review almost three (3) years' worth of documents, including emails from multiple employees, to determine which documents are required to be produced. Such a task would take several months to complete and would be extremely costly. Weir Affidavit ¶ 13.

26. MTM should not to be required to incur these expenses and burdens simply because Plaintiff demands it. If Plaintiff demands ESI to be in a specific format, Plaintiff should incur the cost of converting the ESI to its preferred format, instead of requiring MTM, a non-party, to bear that cost.

27. If Plaintiff has not already done so, Plaintiff could serve discovery requests directly to Defendant requesting the information at issue in the subpoena.

WHEREFORE, based upon the forgoing, and any supplemental pleadings, memoranda, and/or oral arguments, MTM requests the following relief:

1. An order quashing the subpoena;

2. Alternatively, a protective order prohibiting the production of MTM's confidential and proprietary information, limiting the scope of production of documents and communications MTM exchanged with Defendant, and/or allowing MTM to produce the documents in the format they are kept in the ordinary course of business;

3. An award of attorneys' fees and lost earnings, as the Court deems appropriate, for Plaintiff's failure to take reasonable steps, as required by Rule 45, to avoid imposing an undue burden or expense on MTM; and

4. All other relief that the Court deems just and appropriate under the circumstances.

Respectfully submitted,

ICE MILLER LLP


/s/ Melanie E. Harris
Melanie E. Harris (#22994-49)
Kaitlyn J. Marschke (#31411-29)

*Counsel for Major Tool & Machine, Inc.*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-5996
melanie.harris@icemiller.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been sent via United States First Class mail, postage prepaid, on the 18th day of November, 2015, addressed to:

> Brian P. Waagner
> c/o Daniel King
> 201 N. Illinois, Suite 1900
> Indianapolis, IN 46204-4236

/s/ Melanie E. Harris